UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| YANAHIT PADILLA TORRES, ARLET MACARENO, WENDY GARCIA, LINA CARRION, SILVIA SORIANO, MARIA IRMA HENRIQUEZ, ELENA JIMENEZ, GRACIELA SIMBANA, OUMOU SYLLA, SOLEDAD JULIA HILARES HUARCA DE RUIZ, PEMA SHERPA, XIAO FAN LI and the VIOLENCE INTERVENTION PROGRAM,<br><br>Plaintiffs,<br><br>v.<br><br>THE CITY OF NEW YORK, MAYOR MICHAEL BLOOMBERG, RAYMOND W. KELLY, COMMISSIONER OF THE NEW YORK CITY POLICE DEPARTMENT, in his individual and official capacities, NEW YORK CITY POLICE OFFICER VINCENZO TRADOLSE, in his individual capacity; NEW YORK CITY POLICE OFFICER CHRISTOPHER FURDA, in his individual capacity, OFFICER SWEETING, in his individual capacity, NEW YORK CITY POLICE OFFICERS JOHN/JANE DOES #1 THROUGH #24 in their individual capacities,<br><br>Defendants. | No. 13 CV 00076 (MKB) (RER)<br><br>**STIPULATION AND ORDER OF SETTLEMENT** |

## **RECITALS**

**WHEREAS**, three amended complaints were filed and a fourth amended complaint was proposed to be filed (the "Complaint") on behalf of Plaintiffs YANAHIT PADILLA TORRES, ARLET MACARENO, WENDY GARCIA, LINA CARRION, SILVIA SORIANO, MARIA IRMA HENRIQUEZ, ELENA JIMENEZ, GRACIELA SIMBANA, OUMOU SYLLA,

1

SOLEDAD JULIA HILARES HUARCA DE RUIZ, PEMA SHERPA, XIAO FAN LI and the VIOLENCE INTERVENTION PROGRAM and proposed Plaintiffs SABINA PERALTA, LEONOR TEJADA, and MARITZA VEGA (collectively "Plaintiffs");

**WHEREAS** Plaintiffs asserted claims against the CITY OF NEW YORK, MAYOR MICHAEL BLOOMBERG; RAYMOND W. KELLY, COMMISSIONER OF THE NEW YORK CITY POLICE DEPARTMENT (NYPD); OFFICER VINCENZO TRADOLSE; OFFICER CHRISTOPHER FURDA; OFFICER SWEETING; OFFICER FRANK AGOSTINI; as well as 24 John and Jane Doe NYPD officers[1] (collectively "Defendants");

**WHEREAS** Plaintiffs alleged that because of their national origin and status as limited English proficient individuals, Defendants failed to provide appropriate police services to Plaintiffs;

**WHEREAS** Plaintiffs alleged that Defendants' conduct violated Title VI of the Civil Rights Act of 1964, the Safe Streets Act, the Equal Protection Clause and the First and Fourth Amendments of the U.S. Constitution, the New York City Human Rights Law, and the Constitution and laws of the State of New York;

**WHEREAS** no finding of liability has been made, and Defendants deny any and all claims of fault, liability or wrongdoing asserted in the Complaint;

**WHEREAS** Plaintiffs and Defendants (the "Parties") are entering into this Stipulation and Order of Settlement (the "Stipulation") solely for the purpose of settling the disputes between them and to avoid further litigation;

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), Mayor Bill de Blasio and NYPD Commissioner James P. O'Neill are automatically substituted as parties for former Mayor of the City of New York Michael Bloomberg and former NYPD Commissioner Raymond W. Kelly, respectively.

2

**WHEREAS** the NYPD's Language Access Plan requires its officers and public-facing staff, when performing law enforcement functions, to take reasonable steps to offer limited English proficient (LEP) individuals timely and meaningful access to NYPD's services;

**WHEREAS**, the Parties agree that the implementation of NYPD's Language Access Plan is intended to provide LEP individuals with access to free foreign language assistance when necessary or upon request when NYPD employees are performing law enforcement functions, such as when NYPD officers respond to family matters including incidents involving domestic violence; and

**NOW, THEREFORE, IT IS HEREBY STIPULATED AND AGREED**, by the undersigned, that this action is settled on the following terms and conditions:

I. **DEFINITIONS:**

1. The following definitions apply to this Stipulation:

    a. "Bystander" means anyone providing oral foreign language assistance who is not a Certified Bilingual Officer or an interpreter provided through a Telephonic Interpretation Service. As such, a Bystander includes:

        i. bilingual NYPD officers and employees who are not Certified Bilingual Officers; and

        ii. bilingual individuals, including minors.

    b. "Certified Bilingual Officer" means an NYPD officer or employee who has met a predetermined level of competency pursuant to the Foreign Language Certification Initiative.

    c. "Citywide Expansion Date" means the date that the DV Language Access Program is expanded citywide to all patrol boroughs.

d. "DV" means domestic violence.

e. "DV family job" means an incident that involves a family type offense, including a DV incident.

f. "DV Language Access Program" or "Program" means the NYPD program wherein Language Services (as defined herein) are made available to LEP Individuals to provide effective communication with them when the NYPD responds to DV family jobs that involve individuals who need or request foreign language assistance services to communicate with the responding NYPD officers.

g. "Effective Date" means the date on which this Stipulation is entered as an order of the Court.

h. "Effective Period" means the period of time from the Effective Date of this Stipulation until the Termination Date.

i. "Exigent circumstances" means situations when there is an imminent threat to life, health, or safety, or a suspect's escape is imminent, or evidence is about to be removed or destroyed.

j. "Foreign Language Certification Initiative" means the NYPD's use of Berlitz (or another comparable company or entity) to evaluate the oral foreign language skills of NYPD officers and employees to determine whether that officer or employee is proficient in that foreign language.

k. "Injunctive Obligations" means the obligations of the City of New York set forth in Section III, paragraphs 3 through 10, of this Stipulation.

l. "LEP Individual" or "Limited English Proficient Individual" means an

4

      individual who does not speak English as their primary language and who cannot understand the English language at a level sufficient to permit the individual to communicate effectively with an NYPD officer or employee.

m.   "Language Services" means the oral foreign language services that may be used under the umbrella of the DV Language Access Program to help facilitate effective policing and communication between NYPD officers who respond to DV family jobs involving LEP Individuals, and those LEP Individuals. Language services may be provided by:

    i.   a Certified Bilingual Officer;

    ii.   an interpreter employed by a Telephonic Interpretation Service; and/or

    iii.   a Bystander (as defined herein), within the parameters described in paragraph 2(d) of this Stipulation.

n.   "NYPD" means the New York City Police Department.

o.   "Parties" means the Plaintiffs and the Defendants in this action.

p.   "Telephonic Interpretation Service" means a vendor, such as Language Line, that provides oral foreign language interpretation services or assistance to the NYPD by telephone.

q.   "Termination Date" means the date that this Stipulation terminates and the Court's jurisdiction ends for all purposes, which shall be one year after the Citywide Expansion Date unless Plaintiffs successfully move to extend the Court's jurisdiction pursuant to paragraph 12 of this Stipulation.

## II. SCOPE OF THE DV LANGUAGE ACCESS PROGRAM

2. The DV Language Access Program will include the following specific procedures:

   a. NYPD officers have NYPD-issued cell phones or smart phones by which officers responding to calls that fall within the DV Language Access Program may access a Telephonic Interpretation Service at no cost to the officer.

   b. 911 will alert the responding NYPD officer(s) when a 911 caller is communicating with the 911 operator (i) in a foreign language, or (ii) with the assistance of an interpreter.

   c. The responding NYPD officer(s) will determine whether there is a need for Language Services, and if so, will offer the LEP Individual Language Services in the form of:

   i. a Certified Bilingual Officer, or

   ii. an interpreter with a Telephonic Interpretation Service,

   unless the use of a Bystander is permitted as set forth in paragraph 2(d) of this Stipulation.

   d. An NYPD officer may use a Bystander to provide language assistance in Exigent Circumstances, and during the initial assessment on scene to determine whether there are Exigent Circumstances. However, after any Exigent Circumstances have passed, an NYPD officer will use a Certified Bilingual Officer or a Telephonic Interpretation Service:

   i. to verify information obtained by an NYPD officer through the

6

     use of a Bystander by interviewing the LEP Individual; and

    ii. to offer the LEP Individual an opportunity to provide additional information to the NYPD officer.

 e. Notwithstanding paragraph (2)(d), an NYPD officer is not required to verify the information obtained by an NYPD officer through the use of a Bystander during Exigent Circumstances:

    i. in the case of the LEP Individual's hospitalization, death, disappearance, or refusal/inability to cooperate with the NYPD; or

    ii. when the LEP Individual declines the NYPD officer's offer to use a Certified Bilingual Officer or Telephonic Interpretation Service.

 f. If an LEP Individual declines an offer by an NYPD officer to use a Certified Bilingual Officer or Telephonic Interpretation Service, the NYPD officer will note that the offer was declined in his or her memobook.

 g. The responding NYPD officer(s) will provide the 911 dispatcher with the appropriate disposition code, which will include one of the following 90I codes (or their functional equivalent if the NYPD modifies the codes during the Effective Period of this Stipulation):

    i. a 90I(1) code to indicate that a Telephonic Interpretation Service was used to provide Language Services;

    ii. a 90I(2) code to indicate that a Certified Bilingual Officer

        provided Language Services;

    iii. a 90I(4) code to indicate that a Bystander was used to provide Language Services; and

    iv. a 90I(5) code to indicate that no Language Services were needed.

h. The DV Language Access Program does not apply to NYPD interactions or encounters to assist in identifying an LEP Individual's primary language.

i. If an NYPD officer responds to a DV family job that involves one or more individuals who need or request language services to communicate with the responding officer (i.e., the DV family job falls within the scope of the DV Language Access Program) and the officer is unable to obtain the assistance of a Certified Bilingual Officer or an interpreter with a Telephonic Interpreter Service in the needed foreign language, the officer will have complied with the DV Language Access Program and this Stipulation if s/he notifies his/her patrol supervisor of the need for and the officer's efforts to obtain Language Services for the individual(s) involved in the DV family job who need or request language services, and the patrol supervisor authorizes the responding officer to cease efforts to obtain Language Services.  In that case, the responding officer shall offer such individuals the opportunity to accompany an NYPD officer to an NYPD precinct to await the availability of a Certified Bilingual Officer or interpreter with a Telephonic Interpreter Service who speaks the needed foreign language.  The officer shall document the relevant details in

    his/her memo book, including the efforts made to obtain Language Services, the names of the individuals involved, and the name of the patrol supervisor.

## III. DEFENDANT CITY'S INJUNCTIVE OBLIGATIONS:

### A. Implementation of the DV Language Access Program

  3. The NYPD will do the following:

    a. No later than forty-five (45) days after the Citywide Expansion Date, the NYPD will identify a staff member at each precinct who will be responsible for addressing any questions or concerns related to the NYPD's foreign language access procedures.

    b. No later than forty-five (45) days after the Citywide Expansion Date, the NYPD will designate a centrally-based staff member or unit to be responsible for addressing any NYPD officer's questions and concerns related to NYPD's foreign language access procedures.

    c. No later than eighteen (18) months after the Effective Date, the NYPD will expand the DV Language Access Program city-wide to all patrol boroughs.

    d. No later than five (5) days after the DV Language Access Program's expansion to a new precinct, group of precincts, or patrol borough, Plaintiffs' counsel will be notified of the expansion.

    e. No later than five (5) days after the Citywide Expansion Date, Plaintiffs' counsel will be notified of the Citywide expansion.

    f. No later than three months after a precinct has come online with the DV

      Language Access Program, an NYPD supervisor (or designee) at that precinct will conduct monthly self-inspections to evaluate officer compliance with the DV Language Access Program in that precinct, including the review and follow-up of officer use of 10-90I(4) and 10-90I(5) codes (or their functional equivalent if the NYPD modifies the codes during the Effective Period of this Stipulation).

g.     Between the Citywide Expansion Date and the Termination Date, the NYPD's Quality Assurance Division (QAD) will conduct an annual audit to evaluate the NYPD's compliance with the DV Language Access Program.

h.     During the Effective Period, the NYPD will continue its Foreign Language Certification Initiative.

i.     The NYPD will revise its written policies, including Patrol Guides, and training materials, as necessary, to reflect its DV Language Access Program.

j.     No later than the Citywide Expansion Date, the NYPD will have trained uniformed members of the NYPD responding to 911 calls on the scope of the DV Language Access Program as set forth in paragraph 2 of the Stipulation.

k.     The NYPD will engage in targeted public outreach to LEP communities and community-based organizations on the DV Language Access Program and the availability of foreign language interpretation services.

**B. Training of Certain NYPD Employees**

4. No later than June 1, 2018, the NYPD will train (a) all uniformed members of the NYPD and (b) civilian members of the NYPD assigned to precincts whose duties include taking complaints from the public on the NYPD's language access policies and procedures (collectively, "staff"), including:

   i. how to identify an LEP Individual;

   ii. how to identify an LEP Individual's primary language;

   iii. how to access the Telephonic Interpretation Service;

   iv. for uniformed members of the NYPD only: the parameters of when officers may use a Bystander to provide Language Services as set forth in paragraphs 2(d) and 2(e) herein;

   v. that LEP Individuals should be advised that foreign language interpretation services are available to communicate with NYPD employees in a foreign language at no cost to the LEP Individual; and

   vi. who NYPD staff should contact with questions or concerns or to obtain more information on NYPD's language access policies and procedures.

**C. Procedures and Training Materials:**

5. As per the timing set forth in paragraphs 6 and 7 of this Stipulation, the NYPD will provide Plaintiffs' counsel with copies of the following NYPD documents when they are created or materially revised:

   a. The "Language Access Plan for Limited English Proficient Persons" (the

11

"LAP"); the "Patrol Guide 212-90: Guidelines for Interaction with Limited English Proficient (LEP) Persons" (the "PG 212-90"); and any Interim Orders related to PG 212-90 (the "PG 212-90 Interim Orders").

  b. All training materials concerning the provision of Language Services by staff (as defined in paragraph 4).

6. With respect to documents referenced in paragraph 5 of this Stipulation that are newly created or are initial revisions to NYPD documents to implement Stipulation obligations: On or before 120 days after the Effective Date, and prior to their adoption, Plaintiffs' counsel will be provided with a draft of any such document. Plaintiffs' counsel will have forty-five (45) days to provide written feedback to the City's counsel listed in paragraph 29 herein. The NYPD will consider any written feedback received from Plaintiffs' counsel in good faith.

7. With respect to documents referenced in paragraph 5 of this Stipulation that are being materially revised (after the initial revisions referenced in paragraph 6): During the Effective Period of the Stipulation, the NYPD will provide Plaintiffs' counsel, when feasible, with a draft of any such document undergoing material revision(s) no less than twenty one (21) days before its adoption. Plaintiffs' counsel will have five (5) days to provide written feedback. The NYPD will consider any written feedback received from Plaintiffs' counsel in good faith.

8. The NYPD reserves the right to make changes to or update the training materials referenced in paragraph 5(b) of the Stipulation without providing notice to Plaintiffs pursuant to paragraph 6 of the Stipulation:

  a. when the change is minor and immaterial; or

  b. in response to feedback from participants or trainers' experience in using a particular training material; or

12

   c. in response to a change in the governing law.

In such a case, copies of the updated training material(s) will be provided to Plaintiffs' counsel no later than twenty-one (21) days after they are first used.

**D. Reporting:**

  9. During the Effective Period of the Stipulation, the NYPD will share the following information/data with Plaintiffs' counsel:

   a. a summary of the QAD's annual audit (the "QAD Audit") on the DV Language Access Program within fourteen (14) days of the QAD Audit Report being finalized;

   b. the number of calls made to Language Line, the duration of the calls, and the languages requested;

   c. the number of Certified Bilingual Officers and foreign languages added to the Foreign Language Certification Initiative; and

   d. with respect to the DV Language Access Program, the NYPD will provide the following data for those NYPD patrol boroughs that have participated in the DV Language Access Program for a minimum of ninety (90) days:

    i. the "90I" codes reflected in the NYPD's ICAD reports, which will include the number of 10-90I(1), 10-90I(2), 10-90I(4), and 10-90I(5) codes (or their functional equivalent(s) if the NYPD modifies the codes during the Effective Period of this Stipulation); and

    ii. a summary of the results of the monthly self-inspections conducted by the precinct supervisors.

10. During the Effective Period, the NYPD will provide the information and data identified in paragraph 9(b)-(d) of this Stipulation to Plaintiffs' counsel on a semi-annual basis, starting six (6) months after the Effective Date, until twelve (12) months after the Citywide Expansion Date. The information and data will be shared on or before the last day of the month following the conclusion of the applicable six (6) month period.

## IV. JURISDICTION AND COMPLIANCE

11. The Court's jurisdiction over all individual Defendants, except the Defendant City of New York, shall terminate for all purposes upon payment of the sums set forth in paragraph 16 of this Stipulation.

12. The jurisdiction of this Court over the City's Injunctive Obligations in this Stipulation shall terminate at the conclusion of twelve (12) months following the Citywide Expansion Date, unless Plaintiffs move pursuant to paragraph 13 of this Stipulation, in which case the Court's jurisdiction and Defendant City's Injunctive Obligations for which non-compliance is alleged continue until (a) any such motion is decided; or (b) if any such motion is decided favorably for Plaintiffs, for a maximum of one (1) year after the Termination Date (as defined herein).

13. During the twelve (12) months following the Citywide Expansion Date, if Plaintiffs believe that the City has not complied with any of its Injunctive Obligations under this Stipulation, Plaintiffs' counsel shall notify the City's counsel in writing of the nature and specifics of the alleged failure(s) to comply ("Written Notice") at least thirty (30) days before any motion is made regarding this Stipulation. Such Written Notice shall be accompanied by copies of all documents, data and/or evidence, including the names of any LEP Individuals, relied upon by Plaintiffs for the claimed violation(s). Unless otherwise resolved, the Parties'

counsel shall meet within the thirty (30) day period following receipt of Written Notice by the City's counsel to discuss the claimed violation(s) and possible solutions. If no resolution is reached within thirty (30) days following the City's counsel's receipt of Written Notice, Plaintiffs may move this Court for an order for appropriate relief against the City for those Injunctive Obligations for which the City's non-compliance is timely alleged by Plaintiffs. Any order for additional or appropriate relief cannot extend the original Termination Date for more than one year as provided in paragraph 12.

14. Notwithstanding the foregoing, the City shall not be deemed to have failed to comply with the Injunctive Obligations set forth in the Stipulation for purposes of any motion contemplated in paragraph 13 of this Stipulation unless Plaintiffs can establish that the City's alleged failure(s) to comply were not *de minimis* or isolated, but rather were substantial and sufficiently frequent or widespread as to be systemic in nature.

15. Following the termination of the Court's jurisdiction as set forth in paragraphs 11 and 12, this Stipulation shall be deemed unenforceable as to the City.

## V.   DAMAGES & ATTORNEYS' FEES:

16. The City of New York, on behalf of all Defendants, agrees to pay Plaintiffs the sum of Two Hundred Ninety-Seven Thousand Five Hundred dollars and zero cents ($297,500.00) in full satisfaction of all claims in this action, including claims for damages of any types, costs and expenses. Payment shall be apportioned as follows:

> a. Yanahit Padilla-Torres – Forty Five Thousand Dollars and zero cents ($45,000.00);
>
> b. Arlet Macareno – Thirty Thousand Dollars and zero cents ($30,000.00);
>
> c. Wendy Garcia – Seven Thousand Five Hundred Dollars and zero cents

      ($7,500.00);

    d.    Lina Carrion – Fifteen Thousand Dollars and zero cents ($15,000.00);

    e.    Silvia Soriano – Twenty-Five Thousand Dollars and zero cents ($25,000.00);

    f.    Maria Irma Henriquez – Twenty Thousand Dollars and zero cents ($20,000.00);

    g.    Elena Jimenez – Twenty Thousand Dollars and zero cents ($20,000.00);

    h.    Graciela Simbana – Five Thousand Dollars and zero cents ($5,000.00);

    i.    Oumou Sylla – Thirty Thousand Dollars and zero cents ($30,000.00);

    j.    Soledad Julia Hilares Huarca de Ruiz – Ten Thousand Dollars and zero cents ($10,000.00);

    k.    Pema Sherpa – Twenty Thousand Dollars and zero cents ($20,000.00);

    l.    Xiao Fan Li – Five Thousand Dollars and zero cents ($5,000.00);

    m.    Sabina Peralta – Twenty Thousand Dollars and zero cents ($20.000.00);

    n.    Leonor Tejada – Twenty-Five Thousand Dollars and zero cents ($25,000.00); and

    o.    Maritza Vega – Twenty Thousand Dollars and no cents ($20,000.00).

17. In addition to the amounts set forth in paragraph 16, the City of New York, on behalf of all Defendants, agrees to pay to plaintiffs' counsel, Legal Services of New York, Inc. and Emery Celli Brinckerhoff & Abady LLP the following sums:

    a.    Legal Services of New York, Inc. – Four Hundred Fifteen Thousand Dollars and zero cents ($415,000.00); and

    b.    Emery Celli Brinckerhoff & Abady, LLP – Forty-Five Thousand Dollars

and zero cents ($45,000.00).

18. As consideration for the payment of the amounts set forth in paragraphs 16 and 17 of this Stipulation as well as the Injunctive Obligations set forth in this Stipulation and in full satisfaction of all claims in this action of any type, including but not limited to claims for compensatory damages, punitive damages, and counsel fees and costs, Plaintiffs YANAHIT PADILLA TORRES, ARLET MACARENO, WENDY GARCIA, LINA CARRION, SILVIA SORIANO, MARIA IRMA HENRIQUEZ, ELENA JIMENEZ, GRACIELA SIMBANA, OUMOU SYLLA, SOLEDAD JULIA HILARES HUARCA DE RUIZ, PEMA SHERPA, XIAO FAN LI, SABINA PERALTA, LEONOR TEJADA, MARITZA VEGA and the VIOLENCE INTERVENTION PROGRAM, individually and collectively, agree to the following:

    a. dismissal with prejudice all claims against all Defendants and to release all Defendants, their successors or assignees, and all past and present officials, employees, representatives, and agents of the City of New York, including the NYPD, from any and all liability, claims, and/or rights of action, whether known or unknown, that Plaintiffs raised or could have raised in the Complaint or any amended complaint in this action based upon or related in any way to the allegations in the Complaint, including any alleged deficiency in Defendants' policies and practices related to the provision of foreign language access services, alleged national origin discrimination, and/or the allegation that Defendants failed to provide language services to Plaintiffs during interactions with the NYPD, including all claims for costs, expenses and/or fees incurred in connection with this action; and

17

      b.    assignment of Plaintiffs' rights to counsel fees and costs to Legal Services of New York, Inc. and Emery Celli Brinckerhoff & Abady, LLP.

19.    Plaintiffs shall be responsible for the payment of any federal, state and/or local taxes on the amounts specified in paragraph 16 of this Stipulation.

20.    Plaintiffs' counsel shall be responsible for the payment of any federal, state and/or local taxes on the amounts specified in paragraph 17 of this Stipulation.

21.    Plaintiffs and their counsel will each execute and deliver to Defendants' counsel, all documents necessary to effect this settlement, including, without limitation, Releases based on the terms of this Stipulation, affidavits of no liens, and/or substitute W-9 forms. The payments set forth above are subject to and conditioned on delivery of such documents to Defendants' counsel.

## VI. GENERAL PROVISIONS

22.    Nothing contained herein shall be deemed to be an admission by Defendants that they have in any manner or way violated the rights of Plaintiffs, or the rights of any other person or entity, as defined in the constitutions, statutes, ordinances, charters, by-laws, rules or regulations of the United States, the State of New York, or the City of New York, or any other rules, regulations or bylaws of any department or subdivision of the City of New York or the NYPD.

23.    In the event of any change in federal statute or regulation, or state or local statute or regulation, that the City believes changes its responsibilities pursuant to this Stipulation, the City's counsel shall notify Plaintiffs' counsel in writing and the Parties shall attempt to come to an agreement as to any modifications of this Stipulation that are warranted by any such changes in federal, state, or local law. If no resolution is reached within thirty (30) days following the

written notice, Defendants may move this Court for an order for appropriate relief pursuant to Rule 60(b) of the Federal Rules of Civil Procedure.

24. This Stipulation shall have no precedential value or effect whatsoever and shall not be cited, used, or admissible in this or any other action or proceeding as evidence or for any other purpose, except in an action or proceeding to enforce the terms of this Stipulation.

25. Nothing contained herein shall be deemed to constitute a policy or practice of the City of New York or the NYPD.

26. Nothing in this stipulation shall be deemed to be an admission of any fault or liability by any of the Defendants.

27. This Stipulation contains all the terms and conditions agreed upon by the Parties hereto, and no oral agreement entered into at any time nor any written agreement entered into prior to the execution of this Stipulation regarding the subject matter of this action shall be deemed to exist, to bind the Parties hereto, or to vary the terms and conditions contained herein.

28. The Parties further agree that this Stipulation may be executed in counterparts, and that a facsimile signature shall be deemed valid for all purposes.

29. Any notice, report, or communication required by or made pursuant to this Stipulation shall be sent by email, or first class mail upon request, to counsel at the addresses specified below:

>           Edward Josephson                    Janice Birnbaum
>           Christine Clarke                    Carolyn Kruk
>           Legal Services NYC                  Assistant Corporation Counsel
>           40 Worth Street, 6th Floor          New York City Law Department
>           New York, NY 10013                  100 Church Street
>           ejosephson@lsnyc.org                New York, NY 10007
>           cclarke@lsnyc.org                   jbirnbau@law.nyc.gov
>                                               ckruk@law.nyc.gov

30. Any Party may change the designated individuals or addresses set forth in this

Stipulation by written notice to the other party. A copy of this notice will be filed on ECF.

Dated:  New York, New York
        May 18, 2017

| | |
|---|---|
| LEGAL SERVICES NYC | ZACHARY W. CARTER |
| Edward Josephson, Esq. | Corporation Counsel of the City of New York |
| Christine Clarke, Esq. | Attorney for Defendants |
| Attorneys for Plaintiffs | 100 Church Street, Room 2-192 |
| 40 Worth Street, 6th floor | New York, NY 10007 |
| New York, NY 10013 | (212) 356-0893 |
| (646) 442-3664 | ckruk@law.nyc.gov |
| ejosephson@lsnyc.org | |

By: _____        By: _____
    Edward Josephson                   Carolyn Kruk
                                       Assistant Corporation Counsel


SO ORDERED:

_____
Hon. Margo Brodie
United States District Judge